# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| CURTIS J. WALTON, | ) |
| Claimant, | ) |
| v. | ) Case No. CV408-219 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Curtis J. Walton appeals to this Court the Social Security Commissioner's denial of his application for Supplemental Security Income (SSI) benefits. Doc. 1.[1] The Court should **AFFIRM** the Commissioner's decision.

---

[1] The Court will reference the SSI administrative transcript (doc. 14) as "Tr." The Court's own online docketing system electronically imprints transient page numbering on each "screen page" of the transcript. However, the Court will cite to the preprinted, "hard copy" pagination here.

# I. **BACKGROUND**

Walton applied to the Social Security Administration (SSA) for disability insurance benefits in June 2005, alleging disability beginning in October 1997. Tr. 11. At his hearing before an administrative law judge (ALJ), Walton testified that, after graduating high school in 1979, he attended appliance repair training programs and worked as a Sears air conditioner serviceman and full service, major-appliances technician. Tr. 388-89. Knee problems led him to quit his job, and thus he last worked in October 1997. Tr. 391-392, 397-98. He was 40 years old at that time -- i.e., October 1997, the month in which he allegedly became disabled[2] -- and 45 years old at the end of 2002 (when his insured status for the purpose of the Title II disability insurance program expired). Tr. 61, 74, 379 (coverage extended five years beyond his last, October 1997 employment); Tr. 387.

Ruling against him, Tr. 8-19, 36, 376-417, the ALJ found that Walton was unable to perform his past work but could still perform a

---

[2] On his SSI application, Walton revealed that he had been injured on the job in October, 1996, had subsequently received 358 weeks of workers' compensation, had unsuccessfully attempted to start his own business in 1997 (but could not physically perform it), and in 2004 had been found 100% disabled by the Veterans Administration (VA). Doc. 63.

significant number of other light jobs in the national economy. Tr. 17-18. Following an unsuccessful administrative appeal, Walton (*pro se*) sought review here. Doc. 1.

## II. ANALYSIS

### A. Standard of Review

A multi-step process figures into the ALJ's decision. Summarized,

> [a] person who applies for Social Security disability benefits must prove her disability. *See* 20 C.F.R. § 404.1512. The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). In steps one and two, the claimant must show that [he] has not engaged in substantial gainful activity; and [he] must prove a severe impairment or combination of impairments. *Jones*, 190 F.3d at 1228. In step three, the impairment is compared to listed impairments; if the impairment meets or equals a listed impairment, disability is automatically established. *Id*. If step three's impairment listing does not establish disability, in step four the claimant must show an inability to perform past relevant work. *Id*. If the claimant makes a sufficient showing of inability to perform past relevant work, in step five the Commissioner bears the burden of showing other available work that claimant is able to perform. *Id*.

*Dixon v. Astrue*, 312 F. App'x 226, 227-28 (11th Cir. 2009) (footnote omitted); *see also Jackson v. Astrue*, 2009 WL 3644812 at * 3 (N.D.Fla. Oct. 30, 2009). Particularly relevant to the inquiry here, the claimant at step four bears the burden of demonstrating an inability to return to his

3

past relevant work, but the ALJ still has a concomitant duty to develop a full record. *See Lucas v. Sullivan*, 918 F.2d 1567, 1574 n. 3 (11th Cir. 1990). Nevertheless, he need not specifically refer to every piece of evidence in his decision, *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005), provided it "contains sufficient reasons for all material findings of fact and conclusions of law that the reviewing court can discern what the ALJ did and why he did it." *Redmond v. Astrue*, 2009 WL 863587 at * 3 (E.D.N.C. Mar. 24, 2009) (unpublished).

This Court must affirm the ALJ's decision if his conclusions are supported by substantial evidence and proper application of the governing legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer*, 395 F.3d at 1210 (quotes and cites omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotes and cites omitted). And if substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159. The Court

4

cannot substitute its own judgment for the Commissioner's. *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). That is, it is

> the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir.1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir.1963).

*Lewis v. Astrue*, 2009 WL 464264 at * 2 (M.D. Fla. Feb. 24, 2009) (unpublished). That is why this Court cannot reweigh the evidence, but rather "is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled." *Id.*[3] The Court need only "satisfy itself that

---

[3] That particular point warrants some additional elaboration here, where the claimant is proceeding pro se and, as is discussed *infra*, does not directly challenge any of the ALJ's findings and conclusions. For pro se litigants "the Court construes [their] filings liberally, in order to ascertain the nature of [their] objections to the administrative decision under review." *Gable v. Commissioner of Social Sec.*, 2009 WL 3401296 at * 5 (M.D. Fla. Oct. 21, 2009). And for both *pro se* and represented claimants, "[t]he court, during its examination to determine whether there is substantial evidence to support each of the Commissioner's conclusions, must examine the record as a whole, to determine if the Commissioner's conclusions are both reasonable and supportable by substantial evidence." R. C. RUSKELL, SOC. SEC. DISAB. CLAIMS HANDBOOK § 3:27 (*Scope of judicial review*) (May 2009) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983)). But of course, that contemplates an examination spurred by a party before the Court claiming error, pointing to it, and arguing why the ALJ failed to apply established law to the

5

the proper legal standards were applied and legal requirements were met. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988)." *Id.; Hutchison v. Astrue*, 2009 WL 4730556 at * 9 (M.D.Fla. Dec. 4, 2009).

### B. The ALJ's Determination

The ALJ questioned Walton during the administrative hearing, Tr. 378-404, then heard testimony (via hypothetical question inquiry) from Vocational Expert (VE) Dennis Conroy. Tr. 404-14; *see also Arrington v. Social Sec. Admin.*, 2009 WL 4918234 at * 5-6 (11th Cir. Dec. 22, 2009) (affirming SSI denial in no small part based on VE's testimony). Conroy opined that based on a variety of factors there were two jobs in the "Dictionary of Occupational Titles" that an "appliance servicer,"

---

evidence adduced. If no cognizable error is shown, or even argued, then the Court must affirm the result. It is, after all, "not the province of this Court to raise issues on behalf of litigants before it." *United States v. Burkhalter*, 966 F. Supp. 1223, 1225 n. 4 (S.D .Ga. 1997); *see also GJR Inv., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("legal parameters of a given dispute are framed by the positions advanced by the adversaries, and may not be expanded sua sponte by the trial judge") (internal quotes and cite omitted); *cf. Doe, By and Through G. S. v. Johnson*, 52 F.3d 1448, 1457 (7th Cir. 1995) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point"); *Bivens v. Roberts*, 2009 WL 411527 at * 3 (S.D. Ga. Feb. 18, 2009) ("judges must not raise issues and arguments on plaintiffs' behalf, but may only construe pleadings liberally given the linguistic imprecision that untrained legal minds sometimes employ") (citing *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008)).

functioning at a "medium exertional level," could take. Tr. 406-09. Plus, Walton possesses "a number of work skills that could be transferred to other occupations." Tr. 409. Given his limitations, including his medical need (he suffers from pulmonary sarcoidosis) to avoid "concentrated exposure to environmental irritants" and "pollutants," Tr. 411, Conroy noted 122 available occupations generally, including an "electric tool repairer," "quality control technician," and an "inspector." Tr. 412-13.

The ALJ found that "[from October 8, 1997, through December 31, 2002, [Walton] had the following severe impairments: mild degenerative joint disease of the right knee and mild pulmonary disease (20 CFR 404.1520(c))." Tr. 13. He also noted claimant's "history of sarcoidosis and treatment with prednisone for pulmonary sarcoid 1987-80, testicular lichen simplex chronicus, and mild nonsteroidal anti-inflammatory drug (NSAID)-induced ulcers (Exhibit 1 F/69, 78)." *Id.* Too, he considered Walton's other medical ailments, including his "work-related right knee injury, status post two arthroscopies, 1996 and 1998." Tr. 14.

Evaluating that information, including treatment and prognostic data from Walton's own treating physicians,[4] the ALJ concluded that,

---

[4] The ALJ specifically recounted Walton's knee injury and medical treatment:

> In October 1996 Dr. German treated him for the right knee condition. He underwent surgery at the Veterans' Administration Medical Center in October 1996, and, in 1998, Dr. German performed the surgeries. The first surgery was on the right knee to repair a defect that was causing the knee to buckle. There was torn cartilage and degenerative joint disease. Dr German then shaved some arthritis and prescribed a knee brace which, the claimant stated, stopped the knee from buckling. Later in 2002 the right knee began to hurt which, according to VA doctors, resulted from arthritis in his joints.

Tr. 15-16. The ALJ then noted that Walton nevertheless could perform at a higher level than he claimed:

> the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible; as they are not substantiated by objective medical evidence. . . . On December 4, 2002, a treating orthopedist noted claimant had not worked since 1996 and appeared motivated to stay out of work (Exhibit I F/6). The claimant was receiving workers' compensation benefits. Regardless of the accuracy of this opinion, the functional capacity assessment at that time indicated that the claimant was capable of standing, walking, and lifting/carrying the amount of weight required to perform medium-to-heavy work but that he should avoid full squatting and kneeling secondary to increased right knee pain and unprotected heights due to reported knee buckling although no right knee buckling was observed that day.

Tr. 16. The ALJ also noted that the VA and SSA apply different disability criteria. Tr. 17. Finally, the ALJ

> adopt[ed] the opinion of the treating orthopedist documented in January 1998 and in the functional capacity assessment accepted by the treating orthopedist, as noted on October 14, 2002. These opinions are due greater weight than to those of State agency medical consultants, as they are based on objective findings in physical examination and a detailed functional assessment examination and affirmed by the treating orthopedic specialist.

Tr. 17.

while the "claimant was unable to perform any past relevant work (20 CFR 404.1565)," he had "acquired work skills from past relevant work" and, "given his age, education, work experience, and residual capacity," Walton could perform other occupations already existing in the state and national economy, so he was not under a disability for the claimed period. Tr. 17-18.

Walton does not specifically challenge the ALJ's determination, but rather talks around it. Doc. 1, 16, 20. Here, for example, is his Complaint's "Statement of Claim" in its entirety:

> I ... ha[ve] Sarcardosis which keep me from being gainful employed. I know the S.S.A. and the VA rate difference [sic], with my lungs, wrists, joints, testicles sever[e] itching my knees[,] the VA rated me 100%. I paid SS benefits for things that [are] not service connected. My[right] eye, thryoid cancer, and my lower back.

Doc. 1 at 3; *see also id.* at 3 ("Relief") ("For the Court to rule that I may receive benefits from my S.S. account. If the Court put my VA benefits with my S.S. benefit it should work."). Suffice it to say that this does not anywhere approach the showing Walton must make under the above-stated standards.

In a one-page brief Walton acknowledges that he has been receiving VA disability benefits, then complains that he did not know that he could

file for SSI benefits "from the time I was out of work from Oct. 3 1996 – 2002, on worker compensation." Doc. 16 at 1. "I thought I was going back to work," he continues, "until I was awarded my civil action case in this court." Doc. 16 at 1.[5] "Now I need [this Court's favorable SSI] ruling," he contends, "because of the time I was not aware of the time limit" (he does not specify *what* time limit). *Id.* He points out that the ALJ used Conroy to reach his result and "the ruling under S.S. 83-20 for medical expert or advisor, should be in effect." *Id.*

Walton's nonsensical argument is rejected. He does not dispute the ALJ's temporal coverage determination, which is based on the number of years Walton worked and thus paid into the disability coverage system. And VE's are routinely used and sanctioned by the courts in SSI determinations. *See, e.g., Arrington,* 2009 WL 4918234 at * 5-6. Finally,

---

[5] The Court has located on its docket *Walton v. Sears,* CV499-133, filed under the "Americans With Disabilities Act designated as 42 U . S . C. § 12101(b)(1)," *id.* doc. 3 at 1, and later settled. *Id.,* doc. 19.

"S.S. 83-20" is simply an SSA regulation that goes to the onset of a disability; Walton fails to show how it undermines the ALJ's result here.[6]

In a later, one-page (and final) brief, Walton cites his treating physician's (Dr. German's) instruction

> to go with bench work. In that same medical report the [ALJ] is reading from it, state[s] that [I] was recommended by Dr. German for bench work with Sears in Jacksonville, F[lorida]. At the time my right knee was [buckling] so Dr. German injected it. Sears stated that if I wasn't 100% I couldn't come back. For pain Dr. German prescibe[d] [medication]. He stated that I am a liability to any company for work. Your Honor[,]Dr. German told me to open my own company and I did. I told Dr. German 6 mo. later that the [pain medication] was m[a]king me feel real bad. At that time Dr. German stated that he was going to retire me. But retired himself before he could. Dr. Wilson told me he is a conservative, not to retire a young man like myself.

Doc. 20 at 1.

This brief also fails to carry the day. The ALJ was entitled to make credibility determinations (that Walton is exaggerating his condition, and that Dr. German's opinion about Walton's capability *supports* a no-disability determination here), and Walton's citation to "Dr. Wilson's" refusal to "retire" Walton actually supports the ALJ's conclusion that he

---

[6] As the Eleventh Circuit noted: "The disability onset date is 'the first day an individual is disabled as defined in the Act and the regulations.' SSR 83-20." *Moncrief v. Astrue*, 300 F. App'x 879, 879 (11th Cir. 2008).

is capable of performing a variety of jobs available in the state and national economies.

## III. **CONCLUSION**

The Court should **AFFIRM** the Commissioner's decision to deny Walton Supplemental Security Income benefits.

**SO REPORTED AND RECOMMENDED** this  28th  day of January, 2010.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA